UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| GEORGE RADANOVICH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09 CV 115 |
| | ) | |
| COACHMEN INDUSTRIES, INC. | ) | |
| d/b/a COACHMEN RECREATIONAL | ) | |
| VEHICLE, LLC, and | ) | |
| CONSOLIDATED LEISURE | ) | |
| INDUSTRIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff George Radanovich brought this action against defendants Coachmen Industries, Inc, Coachmen Recreational Vehicle, LLC, and Consolidated Leisure Industries, LLC, all of which are related business entities, alleging employment discrimination after he was laid off from his job with defendants. (DE # 1.) Defendants have now filed a motion to dismiss and compel arbitration, arguing that plaintiff's claims are subject to binding arbitration. (DE # 12; DE # 13.) Plaintiff has responded (DE # 16), defendants have replied (DE # 18), and plaintiff has filed a surreply (DE # 22). For the reasons explained below, the motion to dismiss and compel arbitration will be granted.

## I. BACKGROUND

*A. Factual Allegations*

Plaintiff worked for defendants from August 2004 until the summer of 2008, when he was laid off. (DE # 1 at 2-3.) In March 2008, a few months before he was laid off, plaintiff took leave under the Family and Medical Leave Act (FMLA) in order to have knee surgery. (*Id.* at 3.) He claims that he was laid off because of his age and his taking of FMLA leave and other, poorer performing employees were kept on. (*Id.* at 3.)

In the Spring of 2005, defendants adopted the "ACCORD program," a euphemism for their Employee Dispute Resolution program. (DE # 13 at 2.) This program required all employees to submit any future legal disputes they might have with defendants—with a few specific exceptions—to an arbitrator, who would make a binding decision on the matter. (DE # 13-3 at 1-2.) Accordingly, by agreeing to or accepting the program, defendants' employees gave up their rights to bring a lawsuit against defendants for nearly any employment-related issue. (*Id.*)

This program was announced via a March 28, 2005 message from Bill Lenhart, one of defendants' senior human resources employees. (DE # 13-4.) After this message was sent, defendants presented the program to its employees, including plaintiff, by providing them with a revised employee handbook. (DE # 13 at 2-3.) A section of this handbook was entitled "ACCORD program" and outlined the details of the arbitration program, or, as the handbook referred to it, the "binding Employee Dispute Resolution Program." (*Id.* at 3; DE # 13-3 at 1.) This program covered "alleged violations of any

federal, state and/or local law related to employment." (*Id.*) At the end of this section in the handbook, a bolded and underlined portion stated the following "By accepting or continuing employment with the company, you agree to have disputes with the company and you (as set forth above) finally decided by binding arbitration, and you waive any right to a jury or court trial." (DE # 13-3 at 2.) Included with the handbook was a form entitled "Acknowledgment of Receipt of Employee Handbook and Duty to Familiarize myself with its Contents" (the form) that contained a signature block at the bottom . (DE # 13-5.) In addition to language acknowledging the employee's understanding of the rest of the handbook, the form stated that either by signing below, or continuing to work for defendants, the employees indicated their acceptance of the ACCORD program. (*Id.*)

Defendants have produced a copy of the form from May 2005 containing what appears to be plaintiff's signature. (DE # 13-5.) Plaintiff claims he has no memory of signing the form, however. (DE # 16-2 at 1.) In addition, about a month afterward defendants introduced the ACCORD program, plaintiff claims that he was fired and then rehired three to four weeks later, and, after his rehiring, repeatedly refused to sign the form. (DE # 16-2 at 2.) This contrasts with the suggestion in plaintiff's complaint that he worked for defendants continuously from 2004 until he was laid off in 2008. (*See* DE # 1 at 2-3.) In any event, plaintiff continued to work for defendants well after the initiation of the ACCORD program.

At some point in March 2008, plaintiff took FMLA leave to have knee surgery. (DE # 1 at 3.) He returned to work on June 16, 2008, and was laid off at the end of that month, purportedly for poor performance. (*Id.*) Plaintiff alleges that his work performance and experience were better than coworkers at his same level who were retained; all these coworkers were at least ten years' younger and none had recently taken FMLA leave. (*Id.*)

*B. Legal Arguments*

Defendants argue that plaintiff agreed to have claims like the ones raised in his current complaint addressed through binding arbitration. (DE # 13 at 4-8.) Specifically, they assert that plaintiff formed a "binding contract" with defendants by continuing to work for them after they proposed the policy. (*Id.* at 7.)

Plaintiff responds that he never agreed to arbitration, as he refused to sign the acknowledgment form, and was never fired because of his refusal to sign. (DE # 16 at 4-5, 8.) He also asserts that a contract was never formed, as defendants failed to offer any consideration because they are not bound to arbitrate legal issues raised by their employees. (*Id.* at 5-7.) Further, plaintiff argues that the handbook gives defendants the power to rewrite the terms of the ACCORD program whenever they wish, making the contract "illusory" and thus unenforceable. (*Id.* at 6-8.)

Defendants reply that the ACCORD program was a contract between it and plaintiff, and that the consideration was plaintiff's ability to continue to work for defendants. (DE # 18 at 2-7.) Further, they note that while they reserve the right to alter

the program, once an employee submits a matter for arbitration under the existing structure, they are bound, by their agreement, by the results of the arbitration. (DE # 18 at 8-12.)

In his sur-reply, plaintiff contends that by refusing to sign the acknowledgment form and continuing to work for defendants, he was giving them a "counteroffer" to their requirement of mandatory arbitration. (DE # 22 at 1.) By not firing him after he refused to sign the acknowledgment form, plaintiff claims that defendants accepted this counteroffer, and thus the arbitration agreement is not applicable to him. (*Id.* at 3-4.) Plaintiff also alleges that Indiana law holds that employee handbooks cannot form unilateral employment contracts. (*Id.* at 2.)

## II. STANDARD OF REVIEW

Defendants move to dismiss pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6), asserting, respectively, that this court lacks subject matter jurisdiction, and that plaintiff has failed to state a claim upon which relief can be granted.

Regarding RULE 12(b)(1), "[s]ubject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998); see FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). When considering such a motion to dismiss, a court must accept as true all well-pleaded factual allegations and draws all reasonable

inferences in favor of the plaintiff, *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003), although the plaintiff has the obligation to establish jurisdiction by competent proof. *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999).

Under RULE 12(b)(6), the court—again—accepts all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000). Dismissal of a claim under RULE 12(b)(6) is proper only where it is clear from the complaint that there is no set of facts consistent with the allegations that would entitle the plaintiff to relief. *Hison v. King & Spalding*, 467 U.S. 69, 73 (1984).

In any event, although defendants cite RULES 12(b)(1) and (12(b)(6), their true contention is that this case should be dismissed and ordered to arbitration, pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act (FAA). This statute allows a party to a written arbitration agreement to request an order from a federal district court compelling the parties to arbitrate. *See* 9 U.S.C. § 4. Furthermore, the FAA demonstrates that Congress supports "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 23 (1983).

## III. ANALYSIS

The question in this case is whether there was a valid written arbitration agreement between defendants and plaintiff regarding the ACCORD program. Federal courts rely on state contract law to determine whether an arbitration agreement constitutes a valid contract. *See Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126,

6

1130 (7th Cir. 1997). Under Indiana law, this court determines whether an arbitration agreement exists as it would do if evaluating any other purported contract. *ISP.com LLC v. Theising*, 783 N.E.2d 1228, 1232 (Ind. Ct. App. 2003). That means determining, specifically, whether there was an offer, acceptance, and consideration. *See Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996). Here, the updated employee handbook constituted the offer, laying out the terms of the program. Thus, plaintiff contests whether he accepted this offer, and whether there was adequate consideration.

As defendants explained in their handbook, employees, including plaintiff, indicated their acceptance of the ACCORD program by either signing the acknowledgment form at the back of the handbook, or by simply continuing to work for defendants. (DE # 13-3 at 1-2; DE # 13-5.) Defendants have provided a copy of the acknowledgment form that appears to be signed by plaintiff (DE # 13-5), and have submitted an affidavit attesting that plaintiff indeed signed the form. (DE # 18-2.) Plaintiff claims he doesn't remember signing the form defendants have produced, and that he refused to sign the form after he was rehired.

This argument overlooks the fact that the handbook specified that employees accepted the program if they continued to work for defendants. (DE # 16-3 at 17.) It is uncontested that plaintiff continued to work for defendants for several years after the program was initiated, and a decision to continue working for an employer after such a mandatory program is implemented indicates acceptance. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002) (the FAA "does not require arbitration agreements to be

7

written"); *DeGroff v. Mascotech Forming Technologies-Fort Wayne, Inc.*, 179 F.Supp.2d 896, 904-05 (N.D. Ind. 2001) (employee's decision to continue to work for her employer after initiation of arbitration policy constituted acceptance of that policy); *Kreimer v. Delta Faucet Co.*, No. IP99-1507-C-TG, 2000 WL 962817, at *3 (S.D. Ind. June 2, 2002) (Indiana law does not require that an arbitration agreement has to be signed); *see also Anderson v. Indianapolis, Ind. AAMCO Dealers Adver. Pool*, 678 N.E.2d 832, 836 (Ind. Ct. Appl. 1997) (when "a party receives the benefit of a contract for a period of time, he cannot later disavow its validity"). Thus, by continuing to work for defendants after they initiated the program, plaintiff indicated, legally at least, his acceptance of it.

Plaintiff also complains that defendants gave no consideration, that they are asking their employees to give up certain rights, and not providing a benefit in return. However, the facts of this case and existing case law refute this argument. In the employee handbook, defendants stated that "the Company requires, as a condition of, and in consideration for, your continuing at-will employment with the Company, participation in ACCORD." (DE # 16-3 at 16.) Thus, defendants made plain in its offer that the "consideration" it was offering employees for their acceptance of the program was the opportunity to continue working. And Indiana courts recognize that "[a]n employer's promise to continue at-will employment is valid consideration" to support a binding agreement with an employee. *Ackerman v. Kimball International, Inc.*, 634 N.E.2d 778, 781 (Ind. Ct. App. 1994); *see also Gibson*, 121 F.3d at 1131-32. Accordingly,

defendants' allowing plaintiff to continue to work for them constituted adequate consideration to support the contract.

Plaintiff raises this same argument in a slightly different manner when he contends that the arbitration agreement is unenforceable as there is no "mutuality of obligation," because defendants can alter the terms of the agreement at any time. (DE # 16 at 8.) To clarify, this argument is simply another way of saying that the agreement lacked consideration, because defendants gave nothing up. This contention depends on the portion of the employee handbook where defendants reserve the right to "terminate the program or amend its procedures as it deems appropriate from time to time, by written notice, provided that this shall not affect disputes already submitted." (DE # 13-3 at 1.)

However, the fact that the employer is willing to give up its own legal right to defend itself in court, and submit its defense to arbitration, constitutes consideration. *See Kreimer*, 2000 WL 962817 at *3 ("consideration can also be found by way of [the employer's] agreement to be bound by the arbitrator's decision"); *see also Tinder v. Pinkerton Security*, 305 F.3d 728, 734 (7th Cir. 2002) (under Wisconsin law, "[a]n employer's promise to arbitrate in exchange for an employee's promise to do the same constitutes sufficient consideration to support the arbitration agreement"); *compare Gibson*, 121 F.3d at 1128, 1131 (no consideration and thus no enforceable arbitration agreement when employer refused to be bound by results of arbitration). In this case, defendants' agreement binds them to the results of arbitration (DE # 16-4 at 4), and they

9

may not alter the terms of the agreement after a complaint has been submitted. (DE # 13-3 at 1.) By agreeing to be bound by an arbitration, and to not revise matters already initiated, defendants have demonstrated some mutuality of obligation. *See Tinder*, 305 F.3d at 736 (rejecting claim that employer's arbitration promises "were illusory because [the employer] reserved the right to modify or terminate its policies at any time"); *Curry v. Midamerica Care Found.*, No. 02-0053-C T/H, 2002 WL 1821808, at *5 (S.D. Ind. June 4, 2002) (rejecting claim that because employer could revise the arbitration agreement prior to the initiation of any proceeding, that arbitration agreement was invalid).

In his surreply, plaintiff raises two new arguments. First, he asserts that by refusing to sign the form but continuing to work for defendants he engaged in a "counteroffer" that defendants accepted. (DE # 22 at 1.) The alleged counteroffer was, apparently, that plaintiff would continue working for defendants, but would not be subject to the ACCORD program. This argument could be compelling, if plaintiff offered any evidence that he specifically communicated to defendants his refusal to accept the ACCORD program. But he has not, and this court doubts any exists. *See Tinder*, 305 F.3d at 735 (when seeking to avoid summary judgment, party seeking to avoid arbitration must identify evidence in the record demonstrating a material factual dispute for trial). Because there is no evidence– or even an allegation—that plaintiff informed defendants that he was countering their proposal, this argument fails, even though plaintiff refused to sign the form numerous times. And that is because defendants offered two ways of accepting the agreement— either by signing the form,

*or* by simply continuing to work for them. Plaintiff chose the latter option. In sum, by just refusing to sign the form and continuing to work, plaintiff did not inform defendants that he was "countering" their offer.

Second, plaintiff's surreply contends that Indiana law prevents employers from using their employee handbooks to form unilateral contracts. (DE # 22 at 2.) This argument misconstrues Indiana case law. Specifically, in arguing this point, plaintiff cites to *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712 (Ind. 1997), and *Hayes v. Trustees of Indiana University*, 902 N.E.2d 303 (Ind. App. 2009). In both of these cases, at-will employees attempted to sue their employers, unsuccessfully arguing that employee handbooks created an enforceable employment contract between them and their employers. *See Orr*, 689 N.E. at 718-720; *Hayes*, 902 N.E.2d at 312-13. That is far from the case here, where an employer is seeking to enforce an arbitration agreement it specifically promulgated. (*See* DE # 13-5.) Further, *Orr* itself noted that its holding depended, at least in part, on the absence of consideration offered by the employer. *See Orr*, 689 N.E.2d at 719-20. It was this lack of consideration that made the contract unilateral, or one-sided. Here, in contrast, defendants offered the consideration of continued employment and agreed to bind themselves to the decision made by the arbitrator. Thus, the contract at issue in this case is not unilateral. *See* BLACK'S LAW DICTIONARY 326 (7th ed. 1999). Finally, this argument ignores the numerous cases from Indiana's federal courts that have upheld arbitration agreements in circumstances nearly identical to this case. *See Wilkerson v. Serv. Corp. Int'l, SCI*, No. IP 02-0982-C, 2003

WL 21052128, at *1-*2 (S.D. Ind. Apr. 2, 2003); *Curry*, 2002 WL 1821808 at *1; *DeGroff*, 179 F. Supp. 2d at 898-99; *Kreimer*, 2000 WL 962817 at *1. This case law indicates that Indiana employers can legally institute binding arbitration programs, such as the one here.

## IV. CONCLUSION

The court holds that the arbitration agreement between plaintiff and defendants is valid and enforceable. This agreement required the claims raised by plaintiff in this case to be submitted to arbitration. (*See* DE # 13-3 at 1.) Accordingly, defendant's motion (DE # 12) is **GRANTED**. This case is **DISMISSED** and plaintiff is **ORDERED** to submit his claims against defendants to binding arbitration pursuant to the ACCORD program contained in defendants' employee handbook. (*See* DE # 13-3 at 1-2.)

The pending motion for leave to file a response to plaintiff's surreply (DE # 24) is **DENIED AS MOOT**.

                                          **SO ORDERED.**

**DATED:** July 20, 2009

                                          s/James T. Moody
                                          JUDGE JAMES T. MOODY
                                          UNITED STATES DISTRICT COURT